**HINDIN/OWEN/ENGELKE, INC., a corporation, Plaintiff–Appellant,**

v.

**FOUR SEASONS HEALTHCARE, INC., a corporation, Defendant–Appellee.**

Hindin/Owen/Engelke, Inc., a corporation, Plaintiff–Appellant,

v.

Four Seasons Healthcare, Inc., a corporation, Defendant–Appellee.

Nos. 04–56793, 05–55006.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2007.

Filed Feb. 21, 2008.

———

Philip D. Dapeer, Esq., Dapeer & Hirsch, Los Angeles, CA, for Plaintiff–Appellant.

Raymond B. Kim, Esq., Greenberg Traurig, Santa Monica, CA, for Defendant–Appellee.

Before: THOMPSON, WARDLAW, and IKUTA, Circuit Judges.

## MEMORANDUM *

Hindin/Owen/Engelke, Inc. ("HOE") appeals the district court's bench trial judgment and order awarding attorney fees in favor of Four Seasons Healthcare, Inc. ("Four Seasons") in HOE's action for breach of contract and breach of the implied covenant of good faith and fair dealing. The district court's judgment and order were entered on remand from this court.

In HOE's prior appeal 02–56023, we reversed the district court's summary judgment in favor of Four Seasons and the court's post-judgment order awarding attorney fees. In that disposition, we determined that "there are genuine issues of material fact, including but not limited to whether, FINOVA Capital Corporation's agreement with Four Seasons constitutes a 'credit facility or facilities,' 'funding proposal,' 'lending program,' 'funding commitment,' or 'fund' for the purposes of the January 11 Agreement."

With regard to the present appeal, we have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's judgment and its award of attorney fees in favor of Four Seasons.

▮ When a dispute arises over the meaning of contract language under California law, the first question that must be decided is "whether the language is reasonably susceptible to the interpretation urged by the party. If it is not, the case is over." *Oceanside 84 v. Fid. Fed. Bank*, 56 Cal.App.4th 1441, 1448, 66 Cal.Rptr.2d 487 (Cal.Ct.App.1997) (citation omitted). A re-

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

view of the relevant terms of the Engagement Agreement demonstrates that it is reasonably susceptible to multiple interpretations:

— It is unclear whether the efforts to "secure" financing under paragraph 1 are restricted to new financing or if they include the amendment and restatement of a loan.

— It is unclear whether "prospective lenders and investors" in paragraph 2 includes existing genders.

— It is unclear whether "lending program," "funding commitment" and "proposal of financing" in paragraph 3(A)-(B) includes the amendment and restatement of a loan.

— It is unclear whether "lending program," "funding commitment" and "proposal of financing" in paragraph 3(A)-(B) applies to lenders supplied by Four Seasons as opposed to HOE or other investment bankers.

— "[T]he gross credit facility arranged by HOE under this Agreement" in paragraph 3 (sic) on page 2 appears to limit other language providing for a fee when a "lending proposal" is supplied by "HOE or others."

— It is unclear what happens if no funds are received by Four Seasons and the lender has no funds under the transaction to remit to HOE where paragraph five provides for the direct payment of HOE's placement fee by a lender "at the time initial funds are received in connection with the consummation of a financing transaction."

Because the contract is reasonably susceptible to more than one meaning, the district court turned to the second stage of inquiry under California law and asked: "what did the parties intend the language to mean?" *Oceanside 84,* 56 Cal.App.4th at 1448, 66 Cal.Rptr.2d 487.

The district court may "determine the intent of contracting parties from extrinsic evidence including the relations of the parties, their prior negotiations, and their course of dealing." *DP Aviation v. Smiths Indus. Aero. & Def. Sys.,* 268 F.3d 829, 838 (9th Cir.2001) (citations omitted). The district court may also "consider, in addition to the language of the contract, extrinsic evidence, including the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Id.*

When a district court interprets a contract using extrinsic evidence, we review its findings of fact for clear error and we review de novo the principles of law applied to those facts. *Id.* at 836. Here, the district court determined that neither FINOVA nor any other party presented Four Seasons with (1) a "funding proposal," as contemplated under paragraph 3 of the Engagement Agreement; (2) a "lending program," as contemplated under paragraph 3(A) of the Engagement Agreement; or (3) a "proposal of financing" and/or a "funding commitment," as contemplated under paragraph 3(B) of the Engagement Agreement, in connection with the March 8, 2001 Foreclosure Sale, or at any other time during the exclusive period. As to the conversations between Russell Hindin, HOE's co-founder, secretary, treasurer and signatory to the Engagement Agreement, and Rodney Windley, Four Seasons' CEO and signatory to the Engagement Agreement, about their respective understandings of the relevant

provisions of the agreement, the district court found that Mr. Windley's testimony was more credible than Mr. Hindin's testimony and accepted Mr. Windley's explanation of the events as true.

Based on a review of the evidence and testimony presented over two days of trial, and accepting the district court's credibility finding, we affirm the district court's determination that the Engagement Agreement did not provide for the payment of a placement fee to HOE by Four Seasons following the amendment and restatement of the FINOVA loan. Thus, the district court did not err in granting judgment in favor of Four Seasons.

■ The district court also correctly determined that the term "all legal costs" in the Engagement Agreement included an award of attorney fees to the prevailing party. HOE had sued Four Seasons for a placement fee under the Engagement Agreement and for attorney fees it claimed it was entitled to as the prevailing party in the litigation. But HOE was not the prevailing party. Four Seasons was. Therefore, even though Four Seasons had not signed the Agreement, it was entitled to recover its attorney fees because HOE sued it for attorney fees under the Agreement. *See* California Civil Code § 1717(a); *Hsu v. Abbara,* 9 Cal.4th 863, 39 Cal. Rptr.2d 824, 891 P.2d 804, 809 (1995) (Even when a defendant is not a party to the contract sued upon, § 1717 "generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed.").

The district court did not abuse its discretion in awarding Four Seasons the amount of attorney fees it requested. *See*

*Morales v. City of San Rafael,* 96 F.3d 359, 363–64 & n. 8 (9th Cir.1996).

AFFIRMED.